**Kenrick HAMILTON, Plaintiff,**

**v.**

**TRANSPORTATION SECURITY ADMINISTRATION, Defendant.**

**Civil Action No. 16–222 (EGS)**

United States District Court, District of Columbia.

Signed 09/30/2016

Kenrick Hamilton, Centreville, VA, Pro se.

Wyneva Johnson, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

### Order

Emmet G. Sullivan, United States District Judge

Upon consideration of plaintiff's motion for a temporary restraining order ("TRO") and/or a preliminary injunction ("PI"), the response thereto, and the record herein, plaintiff's motion is **DENIED.** Plaintiff's motion for injunctive relief asks the Court to set aside the Transportation Security Administration's ("TSA") revocation of his top secret security clearance and to reinstate him to his position as a

Federal Air Marshal with TSA; to enjoin a credit union from repossessing his car; to enjoin a child support enforcement action emanating from the state of New York; and to enjoin his landlord from evicting him. *See* Mot. for TRO and/or PI, ECF No. 10 at 1–5. With regard to the injunctive relief plaintiff seeks vis-à-vis the credit union, the state of New York, and his landlord, the Court is unable to provide any relief, as the Court is "powerless to issue an injunction against" non-parties. *Citizens Alert Regarding the Env't v. EPA*, 259 F.Supp.2d 9, 17 n.7 (D.D.C. 2003) (citing Fed. R. Civ. P. 65(d)).

The Court must also deny plaintiff's request for the injunctive relief he seeks vis-à-vis TSA. Injunctive relief is only warranted when the party seeking it carries its burden of a "clear showing" of "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "Injunctive relief, not usually available in employment cases, is an extraordinary remedy and must be sparingly granted." *Rahman v. Johanns*, 501 F.Supp.2d 8, 19 (D.D.C. 2007) (citing *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)).

Here, plaintiff has not demonstrated a substantial likelihood of success on the merits. To the extent that his claim is that the revocation of his security clearance—which has resulted in an indefinite suspension and proposed termination from his position as a Federal Air Marshal—was retaliation for filing complaints with EEOC, *see* Compl., ECF No. 1 at 2–4, he has no chance of success on that claim. In

*Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Supreme Court explained that "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527, 108 S.Ct. 818. Accordingly, *Egan* bars "judicial review of adverse employment actions . . . when the issue is denial or revocation of a security clearance." *Burns–Ramirez v. Napolitano*, 962 F.Supp.2d 253, 256 (D.D.C. 2013) (citing *Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005); *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999)). To the extent that plaintiff's claim is that TSA employees not tasked with making security clearance decisions retaliated against him by making false referrals to the agency employees tasked with such decisions, *see* Compl. at 3–4, then *Egan* does not bar judicial review of such a claim. *See Rattigan v. Holder*, 689 F.3d 764, 767–68 (D.C. Cir. 2012) (explaining that *Egan* does not preclude all review of decisions by non-personnel-security employees "who merely report security concerns"). But to prevail on such a claim, plaintiff must prove that "the reporting employee had a discriminatory or retaliatory motive for reporting the plaintiff or referring false information about him" and that "the reporting employee knew that the report or referral of information was false." *Njang v. Whitestone Grp., Inc.*, 187 F.Supp.3d 172, 184 (D.D.C. 2016) (citing *Rattigan*, 689 F.3d at 771). Because "it is not clear from the facts as alleged exactly *when* the referral to the security clearance office occurred, much less *who*, in particular, made the referral, which is information that is necessary for the Court to determine whether or not the motive and knowing falsity elements unite in the same person," *Horsey v. U.S. Dep't of State*, 170 F.Supp.3d 256, 270 (D.D.C.

2016) (quotation marks omitted), the Court is unable to conclude that plaintiff has yet stated a *Rattigan*-type claim, let alone demonstrated a *substantial likelihood* of success on the merits of that claim. *See* Compl. at 3 (alleging, without factual specifics, that "false claim(s) ... came from Washington Field Office (WFO), base[d] on retaliation, due to a pending complaint with EEOC against the office").

 When a plaintiff fails to make a showing of a substantial likelihood of success on the merits, it takes "a very strong showing with respect to the other preliminary injunction factors to turn the tide" in that plaintiff's favor. *Davenport v. Int'l Bhd. of Teamsters, AFL–CIO,* 166 F.3d 356, 366 (D.C. Cir. 1999). Here, plaintiff has not made this "very strong" showing. As concerns irreparable injury in the absence of injunctive relief, to the extent that plaintiff's alleged injury is the financial stress stemming from his indefinite suspension and proposed termination, such injury does not support a finding of irreparable injury. *See Sampson,* 415 U.S. at 92 n.68, 94 S.Ct. 937 ("[A]n insufficiency of savings or difficulties in immediately obtaining other employment ... will not support a finding of irreparable injury, however severely they may affect a particular individual."). To the extent that the alleged injury is eviction from his home and repossession of his car, then plaintiff has demonstrated irreparable injury. *See Edwards v. Habib,* 366 F.2d 628, 630 (D.C. Cir. 1965) (Skelly Wright, J., concurring) ("Certainly being evicted into the street is irreparable damage."). Even so, the remaining factors—the balance of the equities and considerations of public interest—decisively weigh against issuing plaintiff's requested injunctive relief. The Court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v.*

*NRDC, Inc.,* 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Withholding injunctive relief here certainly risks some irreparable injury to plaintiff, but taking the unprecedented step of enjoining an agency's decision to revoke an employee's security clearance and reinstating that employee to his position within the agency would implicate serious public safety and national security concerns—namely that plaintiff poses precisely the risk that the agency has identified and that, if he is reinstated, he might put the public safety and national security in jeopardy. *See ACLU v. Clapper,* 785 F.3d 787, 826 (2d Cir. 2015) (describing the maintenance of national security as "a public interest of the highest order"). Accordingly, because plaintiff has not carried his burden of showing that "all four factors, taken together, weigh in favor" of injunctive relief, *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1292 (D.C. Cir. 2009), the Court **DENIES** plaintiff's motion for injunctive relief.

**SO ORDERED.**